FILED
JUN - 6 2007
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

ENTERED
JUN - 6 2007
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>MICHAEL J. BENNETT,<br><br>                Debtor. | Case No. SA 06-12499 TA<br><br>Chapter 13<br><br>**STATEMENT OF DECISION RE DEBTOR'S VEHICLE OWNERSHIP EXPENSE**<br><br>Date: April 24, 2007<br>Time: 1:30 p.m.<br>Place: 5B |

This case requires the Court to determine whether some Chapter 13 debtors are entitled to an automatic ownership deduction for a second vehicle in determining "disposable income," irrespective of whether any payment for the vehicle is actually due. The Court writes to add a few additional thoughts on this vexing issue of statutory interpretation which has almost evenly divided (so far) twenty six courts nationwide.

The Chapter 13 Trustee ("Trustee") objects to confirmation of the Debtor's plan, with a request for dismissal. The issue is whether the Debtor can deduct on Form B22C [block 29] the full amount allowed under IRS standards for "ownership expense" for his second vehicle, a Plymouth Neon ("second vehicle"), although he in

fact owns the second vehicle free and clear and pays no monthly amount. Debtor only still owes money on his Chevrolet, the other of his two automobiles. If Debtor is allowed to deduct for the second vehicle, in the Central District of California this is a $332 per month "swing" between what the applicable IRS Standards allow and what he actually must pay. The Trustee contends that this "swing" means that the Debtor fails the "means test" and is not pledging *all* of his disposable income within the meaning of 11 U.S.C. §§ 1325(b)(1)(B) and 1325(b)(2). Under § 1325(b)(3)[1] for above-median debtors we are referred to the "means test" formula of § 707(b)(2) for identification of permissible "amounts reasonably necessary to be expended" for the debtor's household in the "disposable income" determination.

In the Ninth Circuit there are two cases that have come down on the side of denying a Chapter 13 debtor the automatic allowance and two that would allow it, notwithstanding that no lien or lease payment is actually owed. Compare *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007) and *In re Carlin*, 348 B.R. 795 (Bankr. D. Oregon 2006) with *In re Swan,* No. 06-50708-ASW, 2007 WL 1146485, (Bankr. N.D. Cal. April 18, 2007) and *In re Naslund*, 359 B.R. 781, 789-790 (Bankr. D. Mont. 2006). Moreover, as Judge Weissbrodt observed in *Swan*, there is no discernable majority view which has emerged nationally, with (as of this writing) eleven opinions holding that a debtor cannot deduct an ownership expense for a vehicle owned free and clear and fifteen, including *Swan*, that go the other way and permit an automatic allowance. The cases that do not permit an automatic allowance are: *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006); *In re Lara*, 347 B.R. 198 (Bankr.

---

[1] Citation of statutes is to Title 11 of the United States Code unless otherwise indicated.

- 2 -

N.D. Tex. 2006); *In re Carlin*, 348 B.R. 795, (Bankr. D. Or. 2006); *In re Oliver*, 350 B.R. 294 (Bankr. W.D. Tex. 2006); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla .2006); *In re Wiggs*, No. 06 B 70203, 2006 WL 2246432, (Bankr. N.D. Ill. August 4, 2006); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D .La. 2007); *Slusher*, 359 B.R. 290; *In re Ceasar*, No. 06-20355, 2007 WL 777821, (Bankr. W.D. La. Mar. 6, 2007). All hold that the debtor may not deduct a vehicle ownership expense unless actually obligated. In addition to *Swan,* fourteen courts have gone the other way, holding that the debtor may deduct the ownership expense for a vehicle that is paid off or not financed or leased: *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006); *In re Hartwick*, 352 B.R. 867 (Bankr. D. Minn. 2006); *In re Grunert*, 353 B.R. 591 (Bankr. E.D. Wis. 2006); *In re Haley*, 354 B.R. 340 (Bankr. D. N.H. 2006); *In re Wilson*, 356 B.R. 114 (Bankr. D. Del. 2006); *In re McIvor*, No. 06-42566, 2006 WL 3949172, (Bankr. E.D. Mich. Nov. 15, 2006); *In re Naslund*, 359 B.R. 781 (Bankr. D. Mont. 2006); *In re Prince*, No. 06-10328C-7G, 2006 WL 3501281, (Bankr. M.D. N.C. Nov. 30, 2006); *In re Zak*, No. 06-41241, 2007 WL 143065, (Bankr. N.D. Ohio Jan 12, 2007); *In re Sawdy*, No. 06-25130, 2007 WL 582535, (Bankr. E.D. Wis. Feb. 20, 2007); *In re Crews,* No. 06-13117, 06-15255, 2007 WL 626041, (Bankr. N.D. Ohio Feb. 23 2007); *In re Enright*, No. 06-10747, 2007 WL 748432, (Bankr.M.D.N.C. Mar. 6, 2007); *In re Watson*, No. 06-11948DK, 2007 WL 1086582, (Bankr. D. Md. Apr. 11, 2007).

The first step is always to look at the statutory language. If the intent is clear and would not lead to absurd results, the Court's analysis must cease and the Court must merely enforce what Congress has written. *See, e.g., Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023 (2004); *In re Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42, 109 S. Ct. 1026, 1030-31 (1989). Unfortunately, the statute is

- 3 -

not nearly as clear as it should have been. § 707(b)(2)(A)(ii)(I), which applies in Chapter 13's for above-median debtors under § 1325(b)(3), provides:

> The debtor's monthly expenses shall be the debtor's **applicable** monthly expense amounts specified under the National Standards and Local Standards, and the debtor's **actual** monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service." (emphasis added).

The Court observes the same ambiguity as highlighted by the parties in their briefs. Monthly expenses shall be debtor's "*applicable* monthly expense amounts specified under the National Standards and Local Standards" of the IRS but will include "*actual* monthly expenses" only for the category specified as "Other Necessary Expenses" issued by the IRS for the area where the debtor resides. The use of the two different adjectives within the same sentence might be read to suggest that something different was intended. Debtor's argument is that *applicable* expenses under the IRS National and Local Standards (which clearly include both housing and transportation ownership) need not then be those *actually* incurred as this is required

- 4 -

only for "Other Necessary Expenses" category, which does not include vehicle ownership. This point was relied upon for the interpretation that vehicle ownership costs are incorporated into § 707(b)(2)(a)(ii)(I) as fixed allowances irrespective of whether they actually exist as monthly payments in several of the cases. See, e.g., Fowler, 349 B.R. at 418; Swan, 2007 WL 1146485, at *5; Crews, 2007 WL 626041, at *3-4.

The Debtor also adopts an argument based on the opinion in Fowler that "applicable" has a narrow interpretation, relating only to a determination of the number of vehicles owned, since the IRS Local Standards have an additional deduction for a taxpayer that owns a second car. Fowler, 349 B.R. at 418-19. Under this view, "applicable" refers to the number of vehicles, not the amount of payment. In contrast, the Trustee urges that "applicable" has a wider meaning, referring to those expenses that "apply" or, in other words, actually exist. The dictionary definition of "applicable" offers little illumination: "capable of or suitable for being applied." Webster's Collegiate Dictionary, 10th Edition.

Unlike other courts, the Court is not persuaded that the different adjectives used in the same statute necessarily imply different meanings, since the two terms are effectively synonyms. Compare In re Farrar-Johnson, 353 B.R. 224, 230 (Bankr. N.D. Ill. 2006), with Slusher, 359 B.R. at 305-310. Moreover, the Court is persuaded that even if slightly different shades of meaning were intended, the meaning offered by Debtor is superfluous and illogical. The Court agrees with the Slusher court that had an automatic allowance been intended, the statute would not have included "applicable" at all but would merely have read "the debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and the Local Standards..." Slusher, 359 B.R. at 308-309.

Moreover, where, as here, the statute is ambiguous, there is a more accepted means for discerning Congressional intent. That is to look into the legislative history. *Thrifty Oil Co. v. Bank of America Nat. Trust and Sav. Assn.*, 322 F. 3d 1039, 1057 (9th Cir. 2003) (*citing Blum v. Stenson*, 465 U.S. 886, 896, 104 S. Ct. 1541, 1548 (1984)). Here the Court is guided by the comments of Congressman Sensenbrenner from the Committee on the Judiciary, H.R. REP. 109-31, pt. 1 at 13-14 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 99-100 with footnote references in brackets:

> In addition, these reforms contemplate replacing the current law's presumption in favor of the debtor with a mandatory presumption of abuse that would arise under certain conditions. As amended, section 707(b) of the Bankruptcy Code would require a court to presume that abuse exists if the amount of the debtor's remaining income, after certain expenses and other specified amounts are deducted from the debtor's current monthly income (a defined term) [FN60] when multiplied by 60, exceeds the lower of the following: (1) 25 percent of the debtor's nonpriority unsecured claims, or $6000 (whichever is greater); or (2) $10,000. Section 102 mandates that the debtor's expenses include reasonably necessary expenditures for health insurance, disability insurance, and health savings accounts for the debtor, the debtor's spouse, and dependents of the debtor. In addition, the debtor's expenses must include those incurred to maintain the safety of the debtor and the debtor's family from family violence as identified in section 309 of the Family Violence Prevention and Services Act or other applicable law. In addition to other specified expenses, [FN61] the debtor's monthly expenses-exclusive of any payments for debts (unless otherwise permitted)-must be the ***applicable*** monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook [FN62] as Necessary Expenses [FN63] under the National [FN64] and Local Standards [FN65] categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses. [FN66] (emphasis added).

Footnotes 62-65 in the Report refer to the "Internal Revenue Service, Internal Revenue Manual-Financial Analysis Handbook, pt. 5.15.1 (rev. May 1, 2004)." It would appear that not only the National and Local Standards *but the Internal Revenue's Financial Analysis Handbook* ("Handbook," also known as The Internal

-6-

Revenue Manual) *as well* was in the mind of Congress when the amendments to 11 U.S.C. §707(b)(2) were adopted. Ironically the word "applicable" immediately precedes this reference to the Handbook in the Report. The Standards as described by the IRS itself are comprised of two elements in determining "Transportation Expenses," i.e. ownership and operating costs, as follows:

> The transportation standards consist of nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs…The ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense…If a taxpayer has a car payment the allowable ownership costs added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has no car payment, or no car, the operating cost equals the allowable transportation expense. *If a taxpayer has no car payment, or no car, the operating costs portion of the transportation standard is used to come up with the allowable transportation expense.*

IRS Collection Standards, (emphasis added), *available at* http://www.irs.gov/individuals/article/0,,id=96543,00.html.

The Handbook provides, in relevant part:

> The transportation standards consist of nationwide figures for loan or lease payments referred to as ownership costs…If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. *If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.*"

Internal Revenue Service Manual, Financial Analysis Handbook, pt. 5, ch. 15,§5.15.1.7(4.B) (2004), (emphasis added), *available at* http://www.irs.gov/irm/part5/ch15s01.html.

Many other courts have been persuaded by the IRS materials. *Hardacre*, 338 B.R. at 726; *McGuire*, 342 B.R. at 612-13; *Barraza*, 346 B.R. at 728; *Carlin*, 348

B.R. at 797; *Hartwick*, 352 B.R. at 869. Others have not; those not persuaded point out that some distinction must have been intended by Congress' citation to the Standards in the statute without additional explicit citation to the Handbook. *Swan*, 2007 WL 1146485, at *6; *Fowler*, 349 B.R. at 419; *Grunert*, 353 B.R. at 594. This Court, however, is persuaded that the specific mention of the Handbook in the Congressional Record cited above suggests that it is more likely and more logical that Congress intended to incorporate *the entire IRS approach* to the issue, including the administrative interpretation of the Standards by the IRS itself. *See Slusher*, 359 B.R. at 309. Had the kind of parsing suggested by Debtor and the cases upon which he relies been Congress' intent, i.e. that the Standards but not the clarification offered in the Handbook should govern, that crucial distinction would have appeared in a more direct fashion. *See In re Rezentes*, No. 06-00754, 2007 WL 98805 at *6 (Bankr. D. Haw. April 2, 2007).

Moreover, there is an additional reason for the Court's opinion. The entire approach under BAPCPA[2] reflects Congress' clear determination that debtors should be obliged to *repay as much of their debt as is reasonably possible*, allowing for ordinary (some would say stingy) costs of living. H.R. REP. No. 109-31, pt.1 at 2 (2005) *as reprinted in* 2005 U.S.C.C.A.N. 88, 89. It is therefore antithetical to this approach that some debtors should get an automatic allowance for "ownership costs" on a vehicle when, in fact, there is no such expense. Debtor offers no persuasive reason for such a "bonus." Debtor argues that paid-off vehicles are generally older and therefore more likely to need repair or earlier replacement. While it might be true that some paid-off vehicles owned by debtors are older and

---

[2] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) signed into law by President Bush April 20, 2005.

might need eventual replacement, the opposite is not necessarily unlikely. Debtors may find themselves owning a paid off vehicle for any variety of reasons. While some models only have a 5-year life expectancy, just about coterminous with the loan, others are renowned for their dependability for a decade or more. Better maintained vehicles last longer and some debtors are scrupulous about maintenance while others are not. Moreover, Debtor's argument for an artificial "ownership expense" is undercut by the fact that the IRS Local Standards offer an additional $200 monthly *operating* expense deduction for older cars. See *McGuire*, 342 B.R. at 613; *Carlin*, 348 B.R. at 798. The Handbook does not treat such a deduction as part of or in addition to the ownership expense, but allows it only as "an additional operating expense" once the loan is paid off in the hypothetical examples shown in the Handbook. Handbook § 5.8.5.5.2 (2005) *available at* www.irs.gov/irm/part5/ch08s05.html. See also *Slusher*, 359 B.R. at 310.

Debtor raises the argument adopted in some of the cases that unfair or absurd results might arise from allowing a debtor with only a few months left on his loan to get the allowance, while the debtor who has just paid off his car gets no allowance. However, just as many seemingly unfair hypothetical cases can be constructed on the other side of the argument. For example, what of the debtor who inherits his parents' Daimler Benz that has been paid off? Should he get the full allowance even though the vehicle might be serviceable for another ten years? Or, if Debtor's view were adopted, why should not every debtor use the limit on his credit card to pay off the remaining lien on his car so he can get the full allowance while his plan might offer his unsecured creditors (like the credit card company) repayment of only pennies on the dollar? Moreover, it could as well be said that the distinction between allowing some debtors an additional amount for ownership

-9-

expenses while denying others anything at all above the operational component of transportation (for example, debtors in New York City who own no car but rely wholly on public transportation) is arbitrary, but such results are implicit in any kind of standardized test such as the "means test."

Certainly there will be unexpected repair or replacement expenses, there will be cases of abuse or attempted abuse and there will be anomalous results. These result in any scheme based upon standardized allowances such as we have with the current "means test" because no two families are in precisely the same financial position. However, the Court believes the better approach is to rely on the inherent flexibility provided under motions to dismiss for abuse under § 707(b)(3)(B), the possibility of additional expenses based on "special circumstances" under § 707(b)(2)(B) or under the ability of the debtor to seek to modify his plan under § 1329, rather than to create an automatic ownership allowance for all owners of vehicles whether there is a commensurate expense associated with the ownership or not. Had such a result been intended by Congress in the teeth of an otherwise quite draconian tightening of the standards expected of debtors, it would have been more clearly stated.

*Sustain objection and grant motion to dismiss unless debtor amends to cure this issue within 20 days.*

Dated: JUN - 6 2007

Hon Theodor C. Albert
UNITED STATES BANKRUPTCY JUDGE

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| In re MICHAEL J. BENNETT | CHAPTER 13 |
|---|---|
| Debtor. | CASE NUMBER  SA 06-12499 TA |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: STATEMENT OF DECISION RE DEBTOR'S VEHICLE OWNERSHIP EXPENSE

    was entered on *(specify date)*:    JUN -6 2007

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*:

    JUN -6 2007

Dated:    JUN -6 2007

JON D. CERETTO
Clerk of the Bankruptcy Court

By: _____
        Deputy Clerk

---

Rev. 1/01    This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    **F 9021-1.1**

## SERVICE LIST

Michael James Bennett
6 Pinestone
Irvine, CA 92604

James G. Beirne
Law Offices of James G. Beirne
520 E. Wilson Ave Ste 110
Glendale, CA 91206

Amrane Cohen
Chapter 13 Trustee
770 The City Drive So, Suite 3300
Orange, CA 92868

Office of the United States Trustee
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701